DECISION
{¶ 1} Relator, Michelle L. Sheppard, has filed this original action in mandamus seeking a writ that compels respondent, Industrial Commission of Ohio, to vacate its order denying relator's request for temporary total disability compensation for the period from May 11, 1999 through February 23, 2000. Relator also asks this court to require the commission to issue an order that grants the requested compensation or such other relief as this court deems appropriate.
{¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, and the magistrate rendered a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that the commission's orders failed to provide an adequate rationale to support its denial of temporary total disability compensation and recommended that this court should grant a limited writ of mandamus directing the commission to vacate its staff hearing officer's order of April 2000, to give further consideration to the evidence and to issue an order granting or denying temporary total disability in compliance with State ex rel. Mitchell v. Robbins Myers, Inc. (1983), 6 Ohio St.3d 481; and State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
{¶ 3} No objections to the decision of the magistrate have been filed.
{¶ 4} Finding no error or other defect on the face of the decision of the magistrate, pursuant to Civ.R. 53, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it.
{¶ 5} In accordance with the decision of the magistrate, this court grants a limited writ of mandamus directing respondent, Industrial Commission of Ohio, to vacate its order that denied relator's application for temporary total disability; to give further consideration to the evidence in a manner consistent with this decision; and to issue a new order either granting or denying the requested compensation, setting forth the evidence upon which the commission relies and providing an explanation for its decision.
Limited writ of mandamus granted.
LAZARUS and BROWN, JJ., concur.
HARSHA, J., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District.
 APPENDIX A IN MANDAMUS
{¶ 6} Relator, Michelle L. Sheppard, filed this original action asking the court to compel respondent Industrial Commission of Ohio to vacate its order denying compensation for temporary total disability ("TTD") and to issue an order that grants the compensation or other relief as the court deems appropriate.
Findings of Fact:
{¶ 7} 1. On June 20, 1998, Michelle L. Sheppard ("claimant") sustained an industrial injury. At the time of her injury, she experienced sharp pain in her back into her right hip. Her right leg became numb and she could not walk. X-rays showed no abnormality. The emergency physician stated that she should be "off work until cleared by WW or MD," and claimant was given crutches and medication. Her workers' compensation claim was allowed for "acute lumbosacral spine strain with sciatica."
{¶ 8} 2. On June 22, 1998, Dr. Bond stated that claimant was limited to sedentary work for seven days, at which time she would be re-evaluated.
{¶ 9} 3. On July 9, 1998, claimant was examined by Dr. Newman, who noted that claimant was working at modified duty and had begun physical therapy. Range of motion was restricted, and Dr. Newman stated that claimant could perform sedentary work.
{¶ 10} 4. On July 21, 1998, claimant exhibited discomfort with extremes of flexion. The straight-leg-raise test was negative. Dr. Newman authorized return to "light" work but modified the twenty-pound limit on lifting to fifteen pounds. He stated that claimant could bend, twist, squat, climb and reach. He concluded: "If she completes therapy — her condition should resolve." He noted claimant's report that she had stayed off work due to asthma, and that she had not been going to physical therapy.
{¶ 11} 5. The physical therapist reported that claimant failed to show up for five appointments and cancelled twice, and had not reached the goals set for her.
{¶ 12} 6. In July 21, 1998, claimant was laid off from her employment.
{¶ 13} 7. In September 1998, claimant worked for VP Equity as a telemarketer. She then worked for a week at Honey Baked Ham.
{¶ 14} 8. In February 1999, claimant began treating with John Sassano, D.O. He found lumbosacral tenderness and spasm with decreased range of motion. The straight-leg test was negative. There were no neurological findings.
{¶ 15} 9. On March 18, 1999, Dr. Sassano reported that claimant complained of intermittent radiculopathy. Although the leg-raise test was positive, "she walks out of the room fine." Dr. Sassano told claimant that they would do an MRI, and if it came back normal, "she needs to get aggressive with therapy."
{¶ 16} 10. On May 11, 1999, claimant said that her pain was just like the first day she was hurt. Dr. Sassano stated that an MRI was pending and that claimant "will stay off work until we can figure this out."
{¶ 17} 11. On May 14, 1999, claimant complained of intermittent swelling of the legs and feet, with severe pain in her legs.
{¶ 18} 12. On July 6, 1999, an MRI was performed, showing no abnormalities. There was no stenosis of the central canal, lateral recess, or foramen. There was no diffuse bulging of discs or herniated discs.
{¶ 19} 13. On July 13, 1999, claimant complained to Dr. Sassano of swelling in her feet, and numbness in the right leg and right hip. Dr. Sassano explained that the MRI was normal. The leg-raising test was negative. He recommended an aggressive program of physical therapy with the goal of returning to work after three weeks of therapy.
{¶ 20} 14. On September 14, 1999, claimant reported to Dr. Sassano that she was having pain in the left hip, and that she was pregnant.
{¶ 21} 15. On November 18, 1999, claimant reported that she had a miscarriage, had pain in the right hip and back, and was taking Vicodin. The doctor prescribed Norgesic Forte and a home exercise program.
{¶ 22} 16. On November 22, 1999, claimant called and said she was having a lot of pain and unable to work. The office called in a prescription for Vicoprofen.
{¶ 23} 17. On November 24, 1999, a woman called the doctor on claimant's behalf and said claimant was in a lot of pain and would like a prescription. The office called in a prescription for Vicoprofen to a different pharmacy number.
{¶ 24} 18. On November 30, 1999, claimant reported that she had gone to the emergency room the previous week due to back pain and difficulty walking. He advised therapy to loosen the spasm and then to strengthen.
{¶ 25} 19. On December 7, 1999, Dr. Sassano completed a C-84 certification of TTD due to lumbosacral strain. He estimated TTD to at least January 24, 2000. He stated that claimant needed physical therapy for six weeks.
{¶ 26} 20. On January 6, 2000, a file review was performed on behalf of the Bureau of Workers' Compensation by S. M. Sethi, M.D., who stated as follows:
 21 year old female alleges she was lifting 20 lbs [illegible] and as she stood up she felt low back pain. She was taken to Barberton hosp. X-ray LS spine was normal. She was treated with Norflex, Prednisone 
Vicodin. She was ordered PT but failed to show up 5 times cancelled therapy two times. Dr. Newman on 7/21/98 found negative SLR and noted her asthma aggravated her, staying off work. New x-ray was normal. Claimant was not seen for her [illegible] and then she got pregnant O pregnancy caused her back ache. She saw Dr on 9/14/99 was 5 weeks pregnant. She had miscarriage on 9/21/99. She was given [illegible] . Dr. Sassano kept giving Norflex 100mg B.D. On 12/7/99, C-84 filed, does not give objective finding why claimant should be off work and how it is related to a simple LS strain sciatica.
 A soft tissue injury is normally healed in 6-12 weeks 
this is now over 18 months. There is no medical substantiation for ongoing treatment necessity of TT from 5/11/99 to 1/24/00. Opinion: Based on review of med records it is my medical opinion that there is insufficient evidence of the alleged TT from 5/11/99 to 1/24/00. Claimant's soft tissue injury has resolved directly and proximately and alleged period of TT disability is not directly and proximately related to 5/20/98 incident.
{¶ 27} 21. On January 6, 2000, claimant visited Dr. Sassano complaining of back pain. She had a mildly antalgic gait and some trouble with heel and toe walking, and was given Vicoprofen and Norflex, and advised to continue therapy at home.
{¶ 28} 22. On January 10, 2000, Dr. Sassano wrote a letter to the employer, answering several questions:
 Current objective physical findings: Currently, Michelle Sheppard continues to suffer from severe spasms in her low back region which were tender to palpation. She does have a decreased range of motion noted to the lumbar spine. She has some inability to do heel and toe walking. She cannot do a deep-knee bend. * * *
 Recommended course of treatment: My recommendations consists of a structured physical therapy program three times a week for six weeks which would progress to a back strengthening program.
 Are there any preexisting condition which have been aggravated or have delayed recovery from the injury: The answer to that is no.
* * *
 When do you estimate the claimant will be able to return to his former employment. If she successfully completes a rehabilitation program, she should be able to return [to] work within one week successful completion.
 If the claimant is unable to perform her usual job at that time, can the claimant perform a light or modified job duty. The answer to that is no. Please see the enclosed work restriction evaluation.
 Please indicate the date maximum recovery has been or will be achieved. That is unknown at this time.
{¶ 29} 23. On January 19, 2000, claimant was examined by Dean W. Erickson, M.D., who reported:
CONCLUSIONS
 Ms. Sheppard does not presently suffer from the above condition of lumbosacral strain with sciatica. The basis for this opinion is as follows:
 • Her lumbosacral strain is a soft tissue injury which has long since gone through the normal healing process.
 • Ms. Sheppard has right leg symptoms, but has no objective evidence to support the diagnosis of sciatica.
 • Ms. Sheppard's current symptoms are related to her physical deconditioning, obesity hyperlordosis and markedly severe symptom magnification behaviors.
 2) Ms. Sheppard's current symptoms are not related to the incident of June 20, 1998.
 3) With respect to Ms. Sheppard's allowed conditions related to the June 20, 1998 incident, she is capable of returning to her former position of employment without restriction in that this condition has resolved.
{¶ 30} 24. On February 17, 2000, claimant visited Dr. Sassano, stating that the flu had prevented her from attending her prior appointments. She complained of problems with her right hip and low back.
{¶ 31} 25. On February 23, 2000, claimant's request for TTD was heard by a district hearing officer ("DHO"), who denied it, stating:
 Temporary total compensation from 05/11/1999 through 02/24/2000 is denied. The office notes of Dr. Sassano for this period indicate treatment approximately once every two months and document right hip and leg problems in addition to claimant's low back. The District Hearing Officer also relies on the 01/19/2000 report of Dr. Erickson, who opines that claimant's problems are not related to her 06/20/1998 injury.
{¶ 32} 26. The request for physical therapy was approved in late February 2000.
{¶ 33} 27. On March 23, 2000, Dr. Sassano's office note indicated that claimant complained of pain in the low back and right leg.
{¶ 34} 28. Claimant appealed the DHO order denying TTD compensation, and, in April 2000, a staff hearing officer ("SHO") affirmed, relying on Drs. Sassano, Dr. Sethi, and Dr. Erickson. The commission refused further appeal.
Conclusions of Law:
{¶ 35} Claimant challenges the denial of TTD compensation. In the subject order, the commission denied TTD compensation from May 11, 1999, through the date of the DHO hearing in February 2000.
{¶ 36} Relator sets forth a single "assignment of error" in her brief but makes several arguments: (1) that the order is fatally ambiguous as to the commission's rationale for denying TTD; (2) that Dr. Sethi's report cannot constitute some evidence because he did not expressly accept the reports of the examining physicians; (3) that Dr. Sethi's report has no relevance to periods prior to the date of his file review and cannot support a denial of TTD for the period prior to January 6, 2000; and (4) that the report of Dr. Erickson cannot support a denial of TTD for the period prior to January 19, 2000.
{¶ 37} The magistrate finds that the commission's orders fail to provide an adequate rationale. The SHO explicitly "relied on the evidence from Dr. Sassano" but rendered a decision that implicitly rejected Dr. Sassano's opinions. The DHO's rationale is also unclear:
 The office notes of Dr. Sassano for this period indicate treatment approximately once every two months and document right hip and leg problems. The District Hearing Officer also relies on the 01/19/2000 report of Dr. Erickson, who opines that claimant's problems are not related to her 06/20/1998 injury.
{¶ 38} The reason for reciting Dr. Sassano's findings is not explained, nor is it clear on the face of the order. It is possible that the commission intended to state that Dr. Sassano relied on nonallowed conditions, but it did not say so, and it is questionable whether leg problems in general would be nonallowed conditions in view of the allowance for sciatica. It is also possible that the DHO did not find Dr. Sassano's TTD opinion to be credible due to the lack of clinical findings to support continued symptoms of radiculopathy or sciatica, and given the normal MRI and lack of neurological findings. Another possibility is that the DHO found Dr. Sethi's assessment of Dr. Sassano's clinical findings to be persuasive. In short, the reason for relying on Dr. Sassano's notes is fatally ambiguous. We must return this matter to the commission for further consideration and a new order complying with State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
{¶ 39} Also, the magistrate notes that Dr. Erickson limited his opinions to claimant's current status on examination. Although the commission could rely on Dr. Erickson, his report provides support only for a denial of TTD from mid-January 2000 to the date of the hearing in February 2000.
{¶ 40} In regard to Dr. Sethi's report, the magistrate finds no defect that would remove it from evidentiary consideration. He recited the findings in the medical file but simply took issue with the opinions. Indeed, his criticism of Dr. Sassano's TTD opinion is the lack of medical findings to justify the opinion that TTD resulted from the industrial injury. Because Dr. Sethi was performing a file review of the medical evidence dating back to the time of injury, his opinion relates to the period of the medical evidence that he reviewed. Thus, his report is relevant to the period of alleged TTD beginning on May 11, 1999 and continuing through the dates of the medical evidence he reviewed.
{¶ 41} Next, the magistrate finds no abuse of discretion in the DHO's consideration of TTD to the date of hearing. Although the C-84 certified TTD only to January 24, 2000, claimant filed supplemental notes and a letter from Dr. Sassano regarding the subsequent period of time. Also, Dr. Erickson's report is relevant to the date of hearing at least. Thus, the DHO did not commit an abuse of discretion in considering the medical evidence to the date of the hearing. To the extent that the DHO order may contain a typographical error, in that the hearing took place on February 23, 2000, whereas the order denies TTD "through 02/24/2000," that matter may be addressed on remand.
{¶ 42} Based on the foregoing, the magistrate recommends that the court grant a limited writ of mandamus, directing the commission to vacate its SHO order of April 2000, and to give further consideration to the evidence and to issue an order granting or denying TTD in compliance with Mitchell, supra, and other applicable law.